IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HEATHER BRAUN, et al., | * | |
| | * | |
| | * | |
| v. | * | Case No.: 1:09-cv-1897 |
| | * | |
| | * | |
| GARY D. MAYNARD, et. al., | * | |
| | * | |
| | * | |
| | ***** | |

MEMORANDUM

This suit concerns the strip search of eight individuals employed at the Maryland Correctional Training Center at Hagerstown, Maryland ("MCTC") on August 12, 2008. Plaintiffs Braun, Goodrich, Keefer, Morrow, Muma, Rodriguez, Sowers, and Ward ("Plaintiffs") have sued defendants Maynard, Stouffer, Horning, Peguese, Walls, Frick, Ralston, and Leonard ("Defendants") in their individual capacity for planning and executing the strip searches. Specifically, Plaintiffs make the following claims against the Defendants:

1. Violation of the Fourth Amendment of the United States Constitution. (Pl.'s Complaint at ¶216-27, Counts I-II.)
2. The Supervisor Defendants are liable for the actions of their subordinates. (Pl.'s Complaint at ¶237–47, Count VI.)
3. Violation the Equal Protection and Due Process Clause of the United States Constitution. (Pl.'s Complaint at ¶¶228-31, Counts III-IV.)
4. Conspiracy under 42 U.S.C. § 1983 to deprive the Plaintiffs of their constitutional rights. (Pl.'s Complaint at ¶¶232-36, Count V.)
5. Violation of Article 24 of the Maryland Declaration of Rights. (Pl.'s Complaint at ¶¶248-53, Count VII.)
6. False imprisonment. (Pl.'s Complaint at ¶¶254-59, Count VIII.)
7. Assault. (Pl.'s Complaint at ¶¶260-63, Counts IX.)
8. Intentional Infliction of Emotional Distress. (Pl.'s Complaint at ¶¶264-67, Count X.)
9. The Supervisor Defendants are liable for negligent supervision under Maryland state law. (Pl.'s Complaint at ¶¶268-74, Counts XI.)

    10. Civil conspiracy under state law to violate Plaintiffs' constitutional rights. (Pl.'s Complaint at ¶¶275-79, Counts XII.)

Now pending before the Court is the Defendants' motion to dismiss the Plaintiffs' first amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' motion to dismiss is granted.

I. **Statement of Facts**[1]

On August 12, 2008 officers at MCTC used an Ionscan machine to detect the possible presence of controlled dangerous substances ("CDS") on the persons of staff members and visitors as they entered MCTC. An Ionscan machine detects the presence and quantity of minute particles of CDS on the surface of clothing or personal items. (Mem. in Supp. of Pl.'s Opp. to Mot. to Dismiss ("Pl.'s Mem."), Ex. 2 at 5.) Ionscans are highly sensitive, capable of detecting one billionth of a gram of CDS. The role of each defendant in the Ionscan operation was as follows:

    <u>Gary D. Maynard</u> – Secretary of Dept. of Public Safety & Correctional Serv. ("DPSCS"), planning the Ionscan search procedures
    <u>Michael J. Stouffer</u> – Commissioner of the Division of Corrections of DPSCS, planning the Ionscan search procedures
    <u>Kenneth Horning</u> – Warden of MCTC, requested the Ionscan
    <u>James V. Peguese</u> – Acting Commissioner of Security Operations, approved the Ionscan
    <u>Kenneth Frick</u> – Lieutenant of MCTC, conducted strip search of male Plaintiffs
    <u>Rhonda Ralston</u> – Lieutenant of MCTC, conducted strip search of female Plaintiffs
    <u>Frederick Walls</u> – Captain of MCTC, requested the Ionscan
    <u>Tonya Leonard</u> – Lieutenant of DPSCS, leader of the Ionscan Team

(Pl.'s Complaint at ¶13-23.)

---

[1] *See* Plaintiff's First Amended Complaint ("Pl.'s Complaint"); *see also Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (in evaluating a motion to dismiss under 12(b)(6) a court should consider those facts that are properly pled in Plaintiff's complaint.)

Prior to commencing Ionscan searches, Leonard informed Walls and her Ionscan team of the procedures that the team would follow.  In the event of an Ionscan alarm, a member of the Maryland Division of Correction K-9 Unit would utilize their canine partner to search the staff member's vehicle.  (*Id.* at ¶36).  Next, the staff member would be strip searched by a MCTC supervisor.  (*Id.*)  Finally, a urine test would be ordered.  (*Id.*)  Plaintiffs contend that on the day of the search, the Ionscan was not operating properly, and members of the Ionscan team were inadequately trained in its use.  (*Id.* at ¶42.)

Nine alarms were received during the course of the operation on August 12, 2008.[2]  Searches of each Plaintiff and their vehicles followed automatically on that basis alone, regardless of the level of the alert or any other attendant facts.  (*Id*. at ¶37.)  No evidence of CDS was recovered from any of the vehicle searches.  (*Id*. at ¶45).  After the vehicle search, each employee was strip searched separately by two MCTC officers in either the men's or women's public restroom adjacent to the visitor registration area at MCTC.  Specifically, the Plaintiff's were ordered to strip naked and then squat and cough.  (*Id.* at ¶46.)  No CDS was uncovered during any of the strip searches.  (*Id.* at ¶47.)  All urine tests were also negative.  (*Id.* at ¶49.)

II.  **Standard of Review**

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard does not require "detailed factual allegations," but it demands more than an unadorned accusation.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading that offers no more than "a formulaic

---

[2] One of the nine individuals who received a positive alert is not a party to this suit.

recitation of the elements of a cause of action" is insufficient. *Id.* To overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient facts to "state a claim for relief that is plausible on its face." *Id.* at 570. Therefore, the facts pled must permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe facts and reasonable inferences in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, the court is not required to accept unsupported legal allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor can a plaintiff avoid a motion to dismiss where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). In evaluating a motion to dismiss, this court may consider "the complaint itself and any documents that are attached to it." *Sec. of State for Defense v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). The court may also consider a document the defendant has attached to its motion to dismiss as long as it is integral to the complaint and authentic. *Id.* at 706.

III. **Defendants Motion to Dismiss for Failure to State a Claim**

4

Plaintiffs have raised federal and state claims arising out of the strip searches conducted on August 12, 2008.  For the following reasons, Defendants' Motion to Dismiss will be granted.

    a. **Plaintiffs' Federal Claims**

        i. **Qualified Immunity under § 1983**

The Plaintiffs' federal claims are barred by qualified immunity under § 1983.  The Defendants are entitled to the protection of qualified immunity if: 1) at the time of the alleged violation, the law was not clearly established; and 2) a reasonable officer in the government official's position would not have known they were violating a constitutional right.  *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

In the instant case, the Defendants have not violated clearly established law.  The degree of reasonable individualized suspicion provided by an Ionscan machine is not clear.  While, clarity does not require that "the very action in question [have] previously been held unlawful," *Wilson v. Layne*, 526 U.S. 603, 615 (1999), officials must still "be on notice that their conduct violates established law" even in novel factual circumstances.  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  In reviewing the Defendants' Motion, I have struggled with the evidentiary significance of an Ionscan alert and therefore cannot find that the Defendants were on notice that their conduct violated the Plaintiffs' Fourth Amendment Rights.  *See Springmen v. Williams*, 122 F.3d 211, 214 (4th Cir. 1997) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines").

However, this incident has raised many questions about the efficacy of an Ionscan machine. What amount of illegal substances need be present to reasonably conclude someone is transporting drugs?  What is the error rate?  What is the probability of cross contamination?  What is required to ensure the machine is working properly?  While these questions persist, it is

clear that more specific DPSCS protocols are needed for the constitutional use of Ionscans as a predicate to the strip search of employees. While policy development is rightly left to the individuals charged with administrating DPSCS, the contours of any Ionscan procedure should be apparent from this dispute. First, the definition of an Ionscan Alert must be set at a high enough level to exclude incidental or innocent contact with CDS. The Ionscan Model 400B detects particles down to a level of one billionth of a gram. It is plausible that detecting such minute amounts of a controlled substance bears little evidentiary significance. *See, e.g.*, *Muhammed v. Drug Enforcement Agency, Asset Forfeiture Unit*, 92 F.3d 648, 653 (8th Cir. 1996) (noting that it is well accepted that most currency in the United States is contaminated with trace amounts of drug residue). Second, in-depth training should be required prior to the operation of such sensitive equipment. Third, any Ionscan alert must be considered in conjunction with attendant facts and circumstances either supporting or undermining suspicion to search. For example, the predictive value of an Ionscan alert may be undermined by a prison guard's particular employment duties, which can include regular contact with CDS.

Ultimately, because the law regarding the use of Ionscan machines was not clear at the time of the search, the Defendants are entitled to qualified immunity. Such a conclusion is not meant to marginalize the Plaintiffs' frustration, or condone certain actions alleged in the complaint. Indeed, a recurrence of the conduct giving rise to this dispute would likely be subject to a different analysis.

ii. **Insufficient Factual Basis to Raise a Plausible Claim**

Even if the Defendants were not entitled to qualified immunity, I would dismiss Plaintiffs' federal claims under Fed. R. Civ. Pro. 12(b)(6).[3]

### 1. **Supervisory Liability Under § 1983**

In addition to direct claims against MCTC supervisors for ordering the Ionscan operation,[4] Plaintiffs seek to hold the supervisors vicariously liable for failing to prevent the injurious conduct of their subordinates. For the following reasons, Plaintiffs' supervisory liability claims are dismissed.

Supervisory liability arises from the "obligation of a supervisory law officer to insure that his subordinates act within the law." *Randall v. Prince George's County, Maryland*, 302 F.3d 188, 203 (4th Cir. 2002).[5] For a supervisor to be liable for failing to prevent the acts of his subordinates under 42 U.S.C. § 1983, the supervisor must have 1) had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiffs; 2) had a response to that knowledge that was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive

---

[3] However, I would have reserved judgment on Plaintiffs' claims for a violation of their Fourth Amendment rights until summary judgment. Plaintiffs have raised a plausible claim that a strip search of a prison employee predicated on nothing more than an Ionscan alert is unreasonable under the Fourth Amendment. "Prison authorities generally may conduct a visual body cavity search when they possess reasonable and individualized suspicion that an employee is hiding contraband on his or her person." *Leverette v. Bell*, 247 F.3d 160, 168 (4th Cir. 2001); *see, e.g., Hunter v. Auger*, 672 F.2d 668, 675 (8th Cir. 1982) (reasonable suspicion requires "individualized suspicion, specifically directed to the person targeted for the strip search and reasonable cause to believe that drugs or other contraband are concealed in the particular place they decide to search"). Because the sole source of suspicion in the instant case was an Ionscan alert, the reasonableness of the strip search turns on the reliability of the Ionscan and any attendant facts and circumstances undermining its predictive reasonableness. Ultimately, a determination of the reliability of the Ionscan machine and reasonableness of reliance upon its alerts would turn on a development of the factual record.

[4] Plaintiffs note that they have sued the supervisory defendants for "materially participating and planning the execution of those searches with nothing more than an alarm from an Ionscan device." (Pl.'s Mem at 22; Pl.'s Complaint at ¶6, 36, 10 and 51.)

[5] This basis of liability is distinct from allegations directly against the Supervisory defendants for promulgating an unconstitutional policy and ordering an unconstitutional search. *Compare 42* U.S.C. § 1983 (a state actor may be liable if he "subjects, or causes to be subjected" an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution") *with Randall*, 302 F. 3d at 202 (noting that supervisory liability is a theory of indirect liability predicated on a failure to act).

7

practices; and 3) affirmatively caused the particular constitutional injury through their inaction. *Id.* at 206.

Plaintiffs' supervisory liability claims fail to satisfy this standard. First, Plaintiffs have pled insufficient facts to indicate that a subordinate was engaged in conduct which posed a pervasive risk of injury. The facts pled relate only to a discrete incident, the search conducted on August 12, 2008. There is no allegation, that on any prior occasion, the employees subjected anyone else to constitutional violations, false imprisonment, assault, or intentional infliction of emotional distress. With respect to the third prong, Plaintiffs have not raised a plausible claim that the supervisors' inaction caused their injuries. According to the complaint, the strip searches were conducted according to policies promulgated by the Supervisory Defendants and initiated upon their orders. (*See* Pl.'s Complaint at ¶244). Supervisory liability is a theory of indirect liability predicated on a failure to act. *Randall*, 302 F. 3d at 202.

### iii. **Equal Protection and Due Process Claims**

In their Memorandum in Opposition to the Motion to Dismiss, Plaintiffs have abandoned their claims under the Equal Protection and Due Process clauses of the United States Constitution. These claims are therefore dismissed. (*See* Pl.'s Mem. at 26.)

### iv. **Conspiracy Under 42 U.S.C. § 1983**

To establish a claim for conspiracy, Plaintiffs must allege an overt act done in furtherance of an agreement designed to deprive Plaintiffs of their constitutional rights and that each member of the alleged conspiracy shared the same conspiratorial objective. *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). Therefore, Plaintiffs needed to plead facts that would "reasonably lead to the inference that Defendants positively or tacitly came to a mutual

understanding to try to accomplish a common and unlawful plan." *Id.* However, no common purpose is alleged, and nothing beyond bare, conclusory allegations of conspiracy are made. The only fact pled to support Plaintiffs' claim is that Defendant Maynard "misinformed" the press about the nature of the Ionscan operation after it had occurred. (Pl.'s Complaint at ¶235.) In light of all other facts pled, this is insufficient to raise a plausible inference that an agreement existed between the Defendants to violate the Plaintiffs' constitutional rights.

    b. **Plaintiffs' State Law Claims**

        i. **Statutory Immunity**

The Defendants are entitled to statutory immunity under the Maryland Tort Claims Act ("MTCA") for the Plaintiffs' state law claims. The MTCA provides that state personnel are immune from suit for a tortious act or omission that is within the scope of employment and made without malice or gross negligence. Md. Code Ann. § 12-105 (2004). The Plaintiffs allegations against correctional officers and their supervisors stem from conduct relating to actions taken in furtherance of maintaining security at MCTC or supervising those performing such functions. This clearly falls within their scope of employment. However, for the reasons previously discussed regarding § 1983 qualified immunity, specifically that the law was not clearly established at the time of the search, Plaintiffs have not pled sufficient facts to establish a claim for malice or gross negligence. *See Barbe v. Pope,* 935 A.2d 699, 717 (2007) (official is grossly negligent when they are "so utterly indifferent to the rights of others that he acts as if such rights did not exist"). Malice requires an "improper motive, or . . . an affirmative intent to injure." *Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard for the consequences." *Pope*, 935 A.2d at 717. To support their allegations, Plaintiffs have pled only instances of "post search ridiculing."

(Mem in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 30.)  Because such statements were allegedly made after the searches concluded, they cannot, on their own, support a plausible inference of ill will during the searches.

### ii.  Insufficient Factual Basis to Raise a Plausible Claim

Even if the Defendants were not entitled to statutory immunity, I would dismiss Plaintiffs' state claims under Fed. R. Civ. Pro. 12(b)(6).

#### 1.  Violation of Article 24 of the Maryland Declaration of Rights

Plaintiffs' claims under Article 24 are dismissed.  Article 24 of the Declaration of Rights is in *pari materia* with the Due Process Clause of the Fourteenth Amendment.[6]  *See Pittsenberger v. Pittsenberger*, 410 A.2d 1052, 1056 (1980).  Because Plaintiffs have abandoned any claims alleging denials of due process under the Fourteenth Amendment, claims under Article 24 are dismissed.  (Pl.'s Mem. at 26.)

#### 2.  False Imprisonment

Plaintiffs have pled insufficient facts to establish a claim for false imprisonment, which requires the deprivation of liberty of another; without consent; and without legal justification. *Henron v. Strader*, 761 A.2d 56, 59 (Md. 2000).  Plaintiffs have not pled any facts to indicate that they were threatened, or that any force was applied to compel them to enter a public restroom adjacent to the visitor area at MCTC.  Nor have they pled any facts to suggest that once inside the restroom they were locked in, or otherwise prohibited from leaving.  Perhaps an inference may be drawn that Plaintiffs may have been fired had they failed to comply.  However,

---

[6] It appears Plaintiffs have inadvertently pled claims under Article 24.  (*See* Pl.'s Mem. at 33 ("Plaintiffs concur . . . that *Article 24* of the Maryland Declaration of Rights is to be read in *pari materia* with the Fourth Amendment to the United States Constitution").)  Article 26 of the Declaration of Rights is in *pari materia* with the Fourth Amendment to the United States Constitution.  *Gadson v. State*, 668 A.2d 22, 26 n.3 (1995).

"voluntary consent to confinement nullifies a claim of false imprisonment, and that consent is not invalidated even if an employee is threatened with discharge." *Carter v. Aramark Sports and Entm't*, 835 A.2d 262, 285 (Md. 2003) (internal citations omitted).  At most, Plaintiffs have raised an inference of the "mere possibility of misconduct," which is insufficient to set forth a cause of action.  *Iqbal*, 129 S.Ct. at 1950.

### 3.  Assault

Plaintiffs' assault claims are also dismissed.  The tort of assault consists of a threat from a defendant with the "apparent ability to carry out that threat" which raises in the mind of the plaintiff an apprehension of imminent bodily harm.  *Lee v. Pfeifer*, 916 F. Supp. 501, 505 (D. Md. 1996).  As noted previously, Plaintiffs have pled insufficient facts to suggest that they were threatened.  Nor have they pled any facts supporting a plausible inference that they were in apprehension of imminent bodily harm.  A mere recitation of the elements of the offense is insufficient to plead a valid claim.  *Twombly*, 550 U.S. at 555.

### 4.  Intentional Infliction of Emotional Distress

Plaintiffs have not established a plausible claim for Intentional Infliction of Emotional Distress ("IIED").  An IIED claim must satisfy four elements: 1) the alleged conduct must be intentional or reckless; 2) the conduct must be extreme and outrageous; 3) there must be a causal connection between the wrongful conduct and the emotional distress; and 4) the emotional distress must be severe.  *See Manikhi v. Mass Transit Admin.,* 758 A.2d 95, 113 (Md. 2000).  While Plaintiffs' allegations may support an inference of unprofessional and reprehensible conduct, their claims fail to allege facts that could lead to a plausible conclusion that the Defendants' conduct was outrageous and the Plaintiffs' subsequent emotional injuries were severe.

Outrageous conduct must be "extreme in degree, as to go beyond all possible bounds of decency and to be regarded atrocious and utterly intolerable in a civilized society." *Harris*, 380 A.2d 611, 614 (Md. 1977). Strip searches (or even more intrusive cavity searches) of prison employees are not on their own extreme and outrageous. Indeed they are condoned if conducted with reasonable individualized suspicion. *Leverette*, 247 F.3d at 168. Beyond the search itself, only three Plaintiffs have alleged additional facts supporting a claim for IIED. Specifically, Ralston is alleged to have discussed the choice of underwear certain Plaintiffs wore on the morning of the search. Defendant Walls is alleged to have made a disparaging comment regarding the size of a plaintiff's genetalia. If made, these comments were certainly unprofessional, inappropriate, and embarrassing; however, they do not rise to the level of outrageousness to support a plausible claim for IIED. To be actionable, conduct must go beyond "mere insults, indignities, . . .[or] . . . petty oppressions." *Harris*, 380 A.2d at 614; *see also Beye v. Bureau of Nat'l Affairs*, 477 A.2d 1197, 1204-05 (Md. Ct. Spec. App. 1984) (no outrageous conduct found in employer's false poor performance ratings, threats, harassment, physical assaults, and deceiving employee to into resignation).

Plaintiffs also have not alleged that their emotional distress was sufficient to satisfy a claim for IIED. Plaintiffs allege that they have suffered severe emotional distress as well as shame, humiliation, degradation, fear of certain co-workers, loss of sleep, loss of appetite, and the inability to maintain familial relationships. Allegations of "physical pain, emotional suffering and great mental anguish" are insufficient to establish a claim for IIED. *Leese v. Baltimore County,* 497 A.2d 159, 174 (Md. Ct. Spec. App. 1985). Recovery for IIED is limited to "those wounds that are truly severe and incapable of healing themselves." *Figueiredo-Torres*

*v. Nickel*, 584 A.2d 69, 76 (Md. 1991) (experiencing hypertension, loss of visual acuity, and required psychiatric hospitalization were sufficient to state a claim for IIED).

### 5. **Negligent Supervision**

Plaintiffs have pled insufficient facts to establish a claim for negligent supervision. "To establish a cause of negligent supervision, the plaintiff must show that [his] injury was caused by the tortuous conduct of an employee, the employer knew or should have known that the employee was capable of inflicting harm of some type, the employer failed to use proper care in hiring or training the employee, and the employer's breach was the proximate cause of the plaintiff's injury. *Williams v. Cloverland Farms Dairy*, F. Supp. 2d 479, 483 (D. Md. 1999). Plaintiffs' allegations are predicated on the theory that supervisors promulgated an Ionscan policy, ordered a search scheme pursuant to that policy, which when implemented violated Plaintiffs' Fourth Amendment rights.[7] Under this theory of liability, Plaintiffs' injuries were not proximately caused by the employer's failure to train subordinates. Instead, any alleged injuries stemmed from the supervisors' directives. Therefore, the facts pled contradict this allegation.

### 6. **State Law Civil Conspiracy**

Plaintiffs have established a valid claim for civil conspiracy. A civil conspiracy requires 1) a confederation of persons; 2) some unlawful act done in furtherance of the conspiracy; and 3) actual legal damage as a result. *Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971). However, a claim of conspiracy, standing alone, is not actionable. *See Manikhi*, 360 Md. at 360 ("the underlying tort is the cause of action . . . co-conspirators are simply additional parties jointly liable with the principal perpetrator"). Because none of Plaintiffs state law claims have survived

---

[7] Because I have dismissed the remainder of Plaintiffs' tort claims, there is no need to evaluate this claim for negligent supervision with respect to those allegations.

Defendants' motion to dismiss, there is no underlying tort.  Alternatively, as noted in the discussion regarding Plaintiffs' § 1983 conspiracy claims, Plaintiffs have pled insufficient facts to support a plausible claim that Defendants agreed to pursue an unlawful plan.  For either reason, Plaintiffs' claim is dismissed.

IV.  **Conclusion**

For the forgoing reasons, Plaintiffs' complaint is dismissed.  A separate order to that effect is being entered herewith.

DATE:  3/31/2010              ___/s/_____
                              J. Frederick Motz
                              United States District Judge